UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| MARC STOUT, ET. AL., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-147 (RDA/TCB) |
| ) | |
| SGT. MISCHOU ) | |
| ) | |
| and ) | |
| ) | |
| LT. BISEK, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS SERGEANT MISCHOU AND LIEUTENANT BISEK'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FILED PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**

COME NOW the defendants, Sergeant Mischou ("Mischou") and Lieutenant Bisek ("Bisek"), by counsel, and in support of their Motion to Dismiss the Complaint filed by the plaintiffs, Marc Stout ("M. Stout") and Robert Stout ("R. Stout") pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and state as follows:

**I.    ALLEGATIONS**

The plaintiffs allege that on December 17, 2019, they stood right outside of, "but on the publicly accessible side, the security gate that separates the sidewalk where they were standing from the restricted area that houses police vehicles and police equipment." Compl. ¶ C. They chose to stand in that specific location because they believed "their chances of capturing a police officer on camera were greatest where" they were standing. *Id.*

As they stood there filming, the defendants approached in their respective police vehicles from the secure side of the security gate. Bisek got out of his vehicle and remained on the secure

side while Mischou got out of his vehicle, opened the security gate and stepped through to the other side of the gate and stood a few feet away from the plaintiffs. One of the plaintiffs volunteered that they were not being detained, the encounter was consensual. *Id.* Mischou asked the plaintiffs whether they needed help or what they needed help with and their response was, "we didn't ask for help, sir." Mischou rephrased his question at which time one of the plaintiffs turned his attention to defendant Bisek who was still standing on the secure side of the gate. *Id.*

Plaintiffs further allege that Mischou stepped onto the sidewalk where both plaintiffs were standing insisting that they speak with him. R. Stout moved from behind his brother M. Stout, stopped and stood next to Mischou at which time Mischou stated to R. Stout, "don't circle around me." It is alleged that Mischou spun R. Stout around, dug one hand into his back, gripped his tricep with the other hand and began shoving R. Stout towards the main road stating that they were being trespassed and escorted off the property. At one point Mischou's hands left R. Stout to push M. Stout off the property also. *Id.* The brothers were escorted off the police department property to the public sidewalk along the public road. *Id.*

II.     LAW AND ARGUMENT

   A.     **Standard of Review**

The burden is on the plaintiffs to demonstrate that federal court jurisdiction exists in this case. *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999)(citing *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942) and *Goldsmith v. Mayor & City Council of Baltimore,* 845 F.2d 61, 64 (4th Cir. 1988)). "The mere assertion of a federal claim is not sufficient to obtain jurisdiction. . . ." *Id.* (citing *Davis v. Pak,* 856 F.2d 648, 650 (4th Cir. 1988)(dismissal of "§ 1983 claims for lack of subject matter jurisdiction because the federal claims were insubstantial and were pretextual state claims.")) "Federal jurisdiction requires that a party assert a *substantial* claim." *Id.* (citing *Hagans v. Lavine,*

415 U.S. 528, 536 (1974)). Federal courts are obligated to dismiss cases whenever it appears the court lacks subject matter jurisdiction. *Lovern,* 190 F.3d at 654.

The Court, in deciding a Rule 12(b)(6) motion, must take all well-pleaded material allegations of a Complaint as admitted and review them in the light most favorable to the plaintiff." *DeSole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)**.** "[L]egal conclusions, elements of a cause of action, and bare assertions devoid a further factual enhancement fail to constitute well-pled facts for Rule 12(b) purposes." *MenetChevrolet Ltd.ConsumerAffairs.com, Inc.*, 591 F.3d. 250, 255 (4th Cir. 2009). Pursuant to the standard established in *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009), compliance with Fed. R. Civ. P. 8(a)(2) requires more than "labels and conclusions," and a Complaint must "state a claim to relief that is plausible on its face." *Id.* Facts that are merely consistent with the defendants' liability are insufficient to state a plausible claim. *Id.*

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), and *Ashcraft v. Iqbal, supra*, the Court enhanced the burden plaintiffs must meet in order for their pleadings to survive a Rule 12(b)(6) motion. In *Twombly*, the Court rejected the prior rules set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The Court stated that *Conley's* "no set of facts" standard has "earned its retirement" and the "phrase is best forgotten as an incomplete negative gloss on an accepted pleadings standard." *Twombly*, 550 U.S. at 563. Instead, the *Twombly* court stated that Fed R. Civ. P. 8 requires a greater showing - a complaint must present enough facts to state an entitlement to relief that is "plausible" on its face. *Id.* at 570.

In explaining the new standard, the Court in *Twombly* stated, "[w]hile, a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's [Rule

3

8(a)(2)] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id.* at 544 (citing *Papason v. Allain*, 478 U.S. 265, 286 (1986)). The Court emphasized, "[w]ithout some factual allegations in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556 n.3 (citing 5 WRIGHT & MILLER § 1202, at 94-95). Factual allegations must not only be made, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In *Iqbal*, the Court expanded on the standard for Rule 12(b)(6) motions to dismiss. The Court explained that, although it remained true post-*Twombly* that courts ruling on such motions to dismiss must accept the allegations set forth in the complaint as true, this tenet does not apply to legal conclusions or "[t]hread bare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The Court explained that while Rule 8 marks a "departure from the hyper-technical code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* Rather, in order to survive a motion to dismiss, a plaintiff must support the legal conclusions in the complaint with factual allegations sufficient to state a plausible-*not merely possible*-claim for relief. *Id.* at 678-79 (emphasis added). Although pro se party pleadings are to be liberally construed, the pleading must still contain sufficient facts to state a claim for relief. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Iqbal,* 556 U.S. at 678.

Normally, in resolving a Rule 12(b)(6) motion, the court does not consider matters outside the pleadings; however, the court may consider documents integral to the Complaint or specifically referenced by it without converting the motion into one for summary judgment. *Tellabs, Inc. v.*

4

*Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). In this case, the court should consider the YouTube filming made by the plaintiffs while on the property and which shows the exact location where they assumed the positions described in order to purposefully draw out police officers solely to film them, and ariel photograph of the police department which confirms the location of the sidewalk area in question. The Court may consider not only facts contained in the Complaint, but also those either found in documents referred to in the Complaint or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, and thus properly subject to judicial notice under Fed. R. Evid. 201." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (internal quotations omitted). *See also*, *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006); *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176,180 (4th Cir. 2009). The plaintiffs own video recordings show the parties and their engagement at the secure fence location described in the Complaint, and the ariel photograph, are "capable of accurate and ready determination." They made a you.tube video of their encounter and posted it on the internet. https://www.youtube.com/watch?y=Nb_Hu2ts7_Y  Exhibits A[1], B.

### B. Plaintiffs' Complaint fails to establish subject matter jurisdiction in this Court and supports no violation of plaintiffs' federal constitutional rights.

Federal courts may analyze whether subject matter jurisdiction exists in two ways: 1) insufficient factual allegations in the pleadings; or 2) evidentiary hearing. *Lovern,* 190 F.3d at 654; *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). Initially, without waiving any other arguments regarding the Court's jurisdiction or evidentiary hearing on the matter, defendants argue

---

[1]Here the defendants do not seek to introduce multiple body-cam footage related to the parties' interaction, but the plaintiffs' own created video made from the filming done at the scene and as described in the Complaint thus making the request distinguishable from a recent district court ruling *Smith v. City of Greensboro,* 2020 U.S. Dist. LEXIS 53132 (M.D. N.C.); *Cf. Koh v. Graf.,* No. 11-CV-02605, 2013 U.S. Dist. LEXIS 136341 (N.D. Ill.). (In which the court considered police officer body camera footage in deciding a motion to dismiss).
5

that the allegations in the Complaint are insufficient as a matter of law to conclude federal subject matter jurisdiction exists in this case. In the analysis the Court assumes that all facts alleged in the complaint are true. *Id.* Plaintiffs' allegations, and as confirmed by the video recording, do not demonstrate that either plaintiff was entitled, as a matter of constitutional right, to be in the location described for the sole purpose of drawing out a police officer to be filmed. It is clear that, despite the conclusory arguments, this location is not one "by long tradition or by government fiat has been devoted to assembly and debate," and is thus not a traditional public forum. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983). In this case, the location fits within the City's definition of "*Non-forum,*" meaning, "a city-owned facility or area not suitable for public assembly for safety reasons, including but not limited to any publicly owned parking garage or parking lot, city office, city storage or utility facility, or similar location. **Persons present in non-forums without authority are trespassing."**[2] (Emphasis added). It was not an area open by tradition or designation to the public for expressive activity. *Goulart v. Meadows,* 345 F.3d 239, 248 (4th Cir. 2003); *United States v. Kokinda,* 497 U.S. 720, 727-28 (1990)(public sidewalk in front of post office constructed to assist postal patrons to negotiate the space between parking lot and front door of the post office, "not to facilitate the daily commerce and life of the neighborhood or city.")

While this case does not involve the application of an ordinance prohibiting solicitation, logical extrapolation from the Court's decision in *Kokindo* reveals that the sidewalk at issue in this case was not on a public thoroughfare or constructed for the means of anything other than to facilitate the movement of police officers going to and from work; farther along, away from where the plaintiffs began their filming, is a sidewalk which facilitates access for patrons having business

---

[2] Manassas Code of Ordinances Sec. 102-42 (a) definition of "*Non-forum.*"

with the police department from the parking lot to the entrance of the building, but the main entrance and parking area are on the other side of the building. *Id.* at 728-29 ("the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum"); *Corral v. Montgomery County,* 4 F. Supp.3d 739, 750 (D.C. Md. 2014)(sidewalk in *Kokindo* did not have the characteristics of "public sidewalks traditionally open to expressive activity...." as it did not run parallel to a public road; "instead, it was 'constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city."

The portion of the sidewalk at which plaintiffs positioned themselves to be seen and then draw out of the building a police officer for the sole purpose of filming is even more remote than that in *Kokinda*. It runs away from the entrance to the building, along a side of the building containing no public access to the police station and no public parking, to a secure fence and fenced area containing police vehicles and equipment to which the public has no access. Plaintiffs were well beyond the public access area and parking lot, and not at the police station to conduct any business whatsoever.[3] They admit that they were not there to conduct business and when asked if they needed assistance or help, outright denied it, eventually degenerating into cursing and yelling at the officers who came from the secure side of the fence. This was not a sidewalk indistinguishable from "other, publicly owned streets, sidewalks or walkways . . . that form a part of both the vehicular and pedestrian transportation grids of downtown" Manassas. *Id.* at 751.

Plaintiffs conduct, as evidenced by their own videotape, shows that their behavior including persistent yelling and cursing as they were walked down the sidewalk, away from the secure fence,

---

[3]Examples of which would be to obtain copy of a police report, make a complaint, meet with an officer to discuss some other business. The court can take judicial notice that police stations are also secure locations for the protection of personnel and visitors.

7

past the entrance to the police station, also shows how their behavior seriously disturbed and disrupted not only the operations of the police department, but the ability of public patrons to enter and conduct business. Plaintiffs argue that they had the absolute right to wander anywhere and everywhere on the police property (except apparently beyond the secure gate) for any reason, including reasons having nothing to do with the business of the police department. This is not the law. *Greer v. Spock,* 424 U.S. 828, 836 (1975)("The guarantees of the First Amendment have never meant 'that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'") (citing *Adderley v. Florida,* 385 U.S. 39, 48 (1966)). Like any property owner, the City of Manassas, owned property constructed and used for a police department and has the power to "preserve the property under its control for the use to which it is lawfully dedicated." *Cox v. Louisiana,* 379 U.S. 559, 560-564 (1965).

Plaintiffs were not arrested or prevented from filming. They kept filming throughout their yelling and cursing at the police officers. They were escorted to a public sidewalk that ran along the public street, a position from which they were free to continue their filming and diatribe.[4] This is not a case where police activity triggered filming by either plaintiff. As pleaded, they intentionally went to an area away from the public parking and access to the building, right up against a secure gate, and made themselves known so an officer or officers would come out and then they began filming. Their suspicious conduct naturally drew attention from those inside the building. They could have chosen to stay away from the entrance to the building so as not to interfere with police business and started out on the traditional public sidewalk to where they were ultimately escorted and stood there and filmed. Thus, any alleged interference with their ability to congregate for the purpose of filming

---

[4] Arguably their conduct violated the following provisions of the City Code of Ordinances: Sec. 78-67, 78-212, 78-311, 78-313, 78-314, 78-315.

was *de minimis* if non-existent. *McClure v. Ports,* 914 F.3d 866, 873 n. 3 (4th Cir. 2019)("'de minimis' label is shorthand for cases where, as here, the government's legitimate interests in managing its own functions are so strong that they dwarf the opposing private interests.")

For the same reasons plaintiffs fail to state a claim for violation of First Amendment constitutional rights, they have failed to set forth any facts to support claims for violation of any rights protected by the Fourteenth Amendment, including due process or equal protection. Other than merely identifying the Amendment and including the words "due process" and equal protection, the Complaint contains no facts to support such claims in this case.

WHEREFORE, the defendants respectfully request that for all of the foregoing reasons, as well as any additional reasons that may be argued at hearing of this matter, the Court grant their Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and dismiss this case and all claims with prejudice.

Pursuant to Local Rule 11(b) counsel reached out to the plaintiffs by email on May 16, 2020, to confer on scheduling a hearing in this matter but has received no response prior to filing these pleadings.

## *ROSEBORO* **NOTICE**

The plaintiffs herein are *pro se* and pursuant to and consistent with the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the following warning is provided:

1. The plaintiffs are entitled to file a response opposing the defendants' Motion to Dismiss and any such response must be filed within 20 days or as ordered by the court; and

2. The court could dismiss this action on the basis of the defendants' papers if the plaintiffs do not file a response;

      3.      The plaintiffs must identify all facts stated by the defendants with which they disagree and must set forth the plaintiffs' version of the facts by offering affidavits (written statements signed before a Notary Public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury); and

      4.      The plaintiffs are entitled to file a legal brief in opposition to the one filed by the defendants.

                **SERGEANT MISCHOU AND LIEUTENANT BISEK**

                By Counsel

      /s/
Julia B. Judkins, VSB No. 22597
Heather K. Bardot, VSB No. 37269
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone: (703) 385-1000
Facsimile:  (703) 385-1555
jjudkins@bmhjlaw.com
hbardot@bmhjlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 18, 2020, I have mailed copies of this pleading to the following identified individuals (and have emailed copy to plaintiffs Messrs. Marc Stout and Robert Stout), and I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF), if possible, to the following:

      Messrs. Marc and Robert Stout
      30 Willow Branch Place
      Fredericksburg, VA 22405
      legaleyesdrugs@gmail.com
      *Pro Se Plaintiffs*

/s/
Julia B. Judkins, VSB No. 22597
BANCROFT, McGAVIN, HORVATH
  & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone: (703) 385-1000
Facsimile: (703) 385-1555
jjudkins@bmhjlaw.com
*Counsel for Defendant*s