# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| MARC STOUT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-147 (RDA/TCB) |
| | ) | |
| SGT. MISCHOU et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS SERGEANT MISCHOU AND LIEUTENANT BISEK'S REPLY MEMORANDUM

COME NOW the defendants, Sergeant Mischou ("Mischou") and Lieutenant Bisek ("Bisek"), by counsel, and for their Reply Memorandum state as follows:

Plaintiffs arguments, including the additional documents they attached to their opposition, support defendants' arguments that: 1) the area of the City of Manassas ("Manassas" or "the City") police station property where they intentionally engaged in conduct to draw the police out of the building in order to then engage in non-peaceful activity has not been intentionally designated or treated by the police department as a place or means of communication as a forum for general public discourse; 2) they suffered no violation of their constitutional rights because at no time were they prevented from filming, their actions were not peaceful, they are not members of the press or media simply because they post to YouTube; and 3) the defendants are entitled to qualified immunity.

The photograph plaintiffs attached to their opposition demonstrates that the location fits within the City's definition of "*Non-forum,*" meaning, "a city-owned facility or area not suitable for public assembly for safety reasons, including but not limited to any publicly owned parking garage or parking lot, city office, city storage or utility facility, or similar location. **Persons present in non-**

**forums without authority are trespassing."[1]** (Emphasis added). The area is directly connected to a security fence, blocking entrance to a parking lot for police vehicles and for officers to enter or exit the facility to engage in police work. Police vehicles include under cover operation vehicles, and from the secure fence one has a view of uniformed and uniformed officers entering and exiting the rear of the building. There is no public entrance or access at that location, no public parking near that location, police commander offices are located along the wall leading up to the security gate, and plaintiffs were seen filming directly into the private offices of members of the command staff before they began filming the secure parking lot. See plaintiffs' three exhibits. It was not an area open by tradition or designation to the public for expressive activity. *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 802 (1985).

By their own admission, plaintiffs were not on the property to conduct public business. Even if they were legitimate members of "the press," which the facts do not support, it is not the business of the press or media to entice police officers out of their station, potentially jeopardizing their safety, in order to yell and scream profanity, while at the same time yelling that they "consent" to the officers stopping and questioning them. These plaintiffs were on an area of the police department property which facilitated entrance to a clearly secure area, provided no public access to anything, and what they where filming was the secure parking area and command staff offices. It is clear from the photograph that the majority of public parking is on the other side of the building which also accesses the main entrance. Surely police departments have the right to restrict access to secure areas for officer and public safety reasons. The plaintiffs' exhibits confirm defendants' position that the facts in this case are akin to those in *United States v. Kokinda,* 497 U.S. 720, 727-28 (1990)(public

---

[1]Manassas Code of Ordinances Sec. 102-42 (a) definition of *"Non-forum."*

sidewalk in front of post office constructed to assist postal patrons to negotiate the space between parking lot and front door of the post office, "not to facilitate the daily commerce and life of the neighborhood or city.")

Plaintiffs' reliance on *United States v. Grace,* 461 U.S. 171 (1983) is mis-placed. The sidewalks surrounding the Supreme Court were sidewalks used by the public like any other sidewalks in Washington, D.C. and located all along public roads thus looked like any other public sidewalk in the city. *Id.,* at p. 183. The facts before the court in this case demonstrate that, Manassas, "no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.,* at 178 (citation omitted). The lone sidewalk at the end of which plaintiffs planted themselves and began filming on their cell phones is in no way "indistinguishable from any other sidewalks in the" City. *Id.,* at 179. The photograph shows an area which any reasonable person would recognize as "some special type of enclave." *Id.,* at 180 (citation omitted). Furthermore, the plaintiffs were not engaged in peaceful activities. *Grace,* 461 U.S. at 177.

The actions of the officers in responding to plaintiffs' conduct demonstrate that the police department had not opened the area for general discourse, much less yelling, extensive profanity and engaging in conduct designed to lead to concerns for officer safety. *Cornelius,* 473 U.S. at 802 ("The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a non-traditional forum for public discourse"); *Snyder v. Phelps,* 562 U.S. 453, 445-46 (behavior of protestor who was acting in a peaceful manner, not engaged in shouting, profanity, or violence, located on property to which he was guided by local officials, all factors in the Court's decision); *United States v. Apel,* 571 U.S. 359, 370-71 (2014)(choice to secure

a portion of government installation more closely with fences did not alter the boundaries of the installation or the authority of the installation commander over the unfenced areas).

As previously argued, the plaintiffs have failed to demonstrate that federal court jurisdiction exists in this case based on the facts alleged and now the additional documents produced. There are insufficient facts to establish they are members of "the press" or "media" just because they post to YouTube and they were not acting in any such capacity when confronted by the police officers. Their First Amendment rights were not violated because they were never prevented from filming and are seen and heard on their own video stating that they were moving away from the area of the district station toward the open public sidewalk adjacent to the public road voluntarily. They were never arrested, were not injured, and had no public business to conduct at the police department.

Defendants should be entitled to qualified immunity under the specific facts of this case. *Wood v. Moss,* 572 U.S. 744, 756-58 (2014). Qualified immunity protects government officials who perform discretionary functions and are shielded from civil liability to the extent that their conduct does not, " . . . violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (internal quotation marks omitted)("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") Qualified immunity is, ". . . . an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if the case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), citing *Mitchell v. Forsythe*, 472 U.S. 511, 516 (1985). Because qualified immunity is an immunity from suit, any

4

question as to whether a defendant is entitled to qualified immunity should be resolved as soon as possible. *Brown v. Gilmore*, 278 F.3d 362, 366 (4th Cir. 2002).

In *Saucier* the Court outlined a two-step approach in which it first considered the threshold question whether the facts taken in the light most favorable to the party asserting the injury do not support that the officer's conduct violated a constitutional right. If there was no constitutional violation then there is no need to proceed to the second step inquiry, whether the right was clearly established at the time of the alleged acts. *Saucier,* 533 U.S. at 206.

In *Pearson v. Callahan,* 555 U.S. 223, 242 (2009)*,* the Court modified the *Saucier* two step analysis. 555 U.S. at 235.  Instead of requiring the court to first consider whether there was a constitutional violation and then whether the rights at issue were "clearly established," the Court set aside this strict sequence, stating that "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 232, 236.

Qualified immunity allows for the defense of,  " . . . good faith mistakes of judgment which may be traced to the status of the law, faulty information, exigent circumstances, and is 'deliberately designed to give protection to all but the plainly incompetent or those who knowingly violate the law . . . in order to avoid undue inhibitions in the performance of official duties.'" *Id.* at 313, citing *Malley v. Briggs*, 475 U.S. 335, 350 (1986) and *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

As argued above, the facts do no support a constitutional violation against either plaintiff. More importantly, under the specific facts, it cannot be said that a reasonable officer should or would have known that two males, with no press identification visible or offered, who were seen using cell phones to film inside police command offices located along a single sidewalk some distance away from the main entrance in an area leading directly to a secure location for police vehicles and officers entry into the facility, were engaged in any constitutionally protected protest, public discourse, form of expression or freedom of the press activity.

For all of the foregoing reasons, for all of the reasons previously argued in defendants' initial Memorandum in Support of Motion to Dismiss, and for any additional reasons to be argued at hearing on this matter, defendants respectfully request that this court grant their Motion to Dismiss and dismiss the case with prejudice.

**SERGEANT MISCHOU AND LIEUTENANT BISEK**

By Counsel

_____/s/_____

Julia B. Judkins, VSB No. 22597
Heather K. Bardot, VSB No. 37269
BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
Telephone: (703) 385-1000
Facsimile:  (703) 385-1555
jjudkins@bmhjlaw.com
hbardot@bmhjlaw.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2020, I have mailed copies of this pleading to the following identified individuals (and have emailed copy to plaintiffs Messrs. Marc Stout and Robert Stout), and I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF), if possible, to the following:

> Messrs. Marc and Robert Stout
> 30 Willow Branch Place
> Fredericksburg, VA 22405
> legaleyesdrugs@gmail.com
> *Pro Se Plaintiffs*

> _____/s/_____
> Julia B. Judkins, VSB No. 22597
> BANCROFT, McGAVIN, HORVATH
>   & JUDKINS, P.C.
> 9990 Fairfax Boulevard, Suite 400
> Fairfax, Virginia 22030
> Telephone: (703) 385-1000
> Facsimile:  (703) 385-1555
> jjudkins@bmhjlaw.com
> *Counsel for Defendant*s