IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARC STOUT, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 1:20-cv-00147 (RDA/TCB) |
| SERGEANT MISCHOU, *et al.*,[1] | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants Sergeant Mischou's ("Sgt. Mischou") and Lieutenant Bisek's ("Lt. Bisek") (collectively, "Defendants") Motion to Dismiss ("Motion"). Dkt. 10. Considering Plaintiffs Marc Stout's ("M. Stout") and Robert Stout's ("R. Stout") (collectively, "Plaintiffs") Complaint (Dkt. 1), Defendants' Motion (Dkt. 10), Defendants' Memorandum in Support of the Motion (Dkt. 11), Plaintiffs' Reply to Defendants' Motion ("Opposition") (Dkt. 13), and Defendants' Reply (Dkt. 14), and for the following reasons, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part.

I.  BACKGROUND

Plaintiff commenced this action by filing a Complaint in this Court, which set forth the following allegations. Dkt. 1. For purposes of considering the Motion, the Court accepts all facts contained within the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] In his Complaint, Plaintiffs identify the Defendants as "Sgt. Mischou," and "Lt. Bisek." Dkt. 1. In their Motion to Dismiss, the Defendants refer to themselves as the same. Dkt. 11. Thus, without knowing the first name of the Defendants, in this Order, this Court will refer to the Defendants as Sgt. Mischou and Lt. Bisek when discussing them individually and "Defendants" when mentioning them collectively.

Plaintiffs' Complaint is a form Complaint for Violation of Civil Rights.  Dkt. 1, 1.  That form Complaint sets forth a number of questions for *pro se* litigants to answer.  *See generally*, Dkt. 1.  However, Plaintiffs did not answer all questions that were provided.  *Id*.

Nevertheless, Plaintiffs maintain that Defendants have violated their "First Amendment right to freedom of expression, freedom of the press, and freedom of assembly[.]"  *Id*. at 4.  Plaintiffs also claim that Defendants have violated their "Fourteenth Amendment right to equal protection and due process[.]"  *Id*.  To that end, Plaintiffs plead that Defendants violated the First and Fourteenth Amendments to the Constitution of the United States when they "acted under their authority" as "Manassas City police officers," "to enforce Virginia's trespassing laws."  Dkt. 1, 4.  Though the form Complaint provides a section for Plaintiffs to specify whether they are bringing their claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), or § 1983, Plaintiffs chose not to respond to that question.

Plaintiffs contend that the actions giving rise to their claims occurred on December 17, 2019, when they were "present on the police department's public sidewalk," in Manassas, Virginia.  *Id*. at 5.  Plaintiffs allege that they "stood right outside, but on the publicly accessible side, of the security gate that separates . . . the publicly accessible area of the parking lot from the restricted area that houses police vehicles and police equipment."  *Id*.  Plaintiff specify they were standing there to "capture[ ] a police officer on camera" and "flex their constitutional rights against the police[.]"  *Id*.; Dkt. 13, 2.

While standing on the sidewalk, Plaintiffs saw Defendants get out of their vehicles.  Dkt. 1, 5.  Sgt. Mischou then opened the security gate, "stepped through the publicly accessible side of the gate[,]" and stood a few feet away from Plaintiffs.  *Id*.  One of the Plainitffs—and

Plaintiffs do not specify which one—told Sgt. Mischou that "he was not detaining" Plaintiffs "but that [ ] [their] encounter was consensual." *Id*.

At some point thereafter, one of the Plaintiffs began speaking with and filming Lt. Bisek. *Id*. As he was doing so, Sgt. Mischou began to approach Plaintiffs and "insist[ed]" that R. Stout speak with him. *Id*. When R. Stout approached Sgt. Mischou to talk with him, Sgt. Mischou told R. Stout not to "circle around" him. *Id*.

Plaintiffs allege that at some point, Sgt. Mischou "spun [ ] [R. Stout] around, dug one hand into [ ] [R. Stout's] back, gripped [ ] [R. Stout's] tricep with the other hand, and began shoving [ ] [R. Stout] towards the main road[.]" *Id*. Plaintiffs maintain that at this point Sgt. Mischou told Plaintiffs that they "were being trespassed and escorted off [of] the property." *Id*.

Plaintiffs further claim that "[a]t one point[,] one of [Sgt.] Mischou's hands left [ ] [R. Stout] to push [ ] [M. Stout] off of the property [ ]." *Id*. Both parties have requested that the Court review Plaintiffs' video of this incident, and the video does not depict either of the officers making physical contact with Plaintiffs. *See* Dkt. Nos. 13; 15, 1. Plaintiffs contend that Sgt. Mischou told them that "the police department parking lot was his public property," that Sgt. Mischou "did [ ] [not] need a reason to trespass [sic] [ ] [Plaintiffs]," and that he "could trespass [sic] [ ] [Plaintiffs] anytime he wanted to for no reason at all from a public property." *Id*.

Plaintiffs also allege that when they were "escorted off [of] the police department property to the sidewalk," Lt. Bisek asked Plaintiffs whether they though it was his "first time doing this." *Id*. It is unclear from the pleadings what "this" may be, but in response to Lt. Bisek's question, Plaintiffs plead that one of the Plaintiffs replied that he "believe[d] [ ] [Lt. Bisek] when he sa[id] [that] they exhibit a pattern of violating people's constitutional rights." *Id*.

3

Plaintiffs also allege that at some point "[a]n unknown officer stepped from feet away to place his face inches away from" one of the two Plaintiffs' camera les and asked that Plaintiff "what it mattered whether he got in [ ] [his] face or not." *Id.*

Plaintiffs recall that Lt. Bisek observed the "entire incident." *Id.* Plaintiffs aver that in this situation, Lt. Bisek "supervised" Sgt. Mischou "as the department's designated official placed in charge of officer training." *Id.*

## II.  STANDARD OF REVIEW

### A.  Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). A district court must dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that the federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Contr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case,

the trial court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weigh the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. Under this second approach, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

B. Failure to State a Claim

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint is also insufficient if it relies upon "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Yet, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v. J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions

drawn from the facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *E. Shore Mkts., Inc.*, 213 F.3d at 175; *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Though generally, "extrinsic evidence should not be considered at the 12(b)(6) stage," the United States Court of Appeals for the Fourth Circuit has opined that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Further, this Court has recognized that "[a] document is integral to the complaint where it is significantly related to a cause of action, and it is authentic when it is not in dispute by the opposing party." *McGlothian v. Fralin*, No. 3:18-cv-507, 2019 WL 1087156, at *7 (E.D. Va. Jan. 23, 2019) (citations omitted).

"While *pro se* litigants cannot 'be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them.'" *Richardson v. Bell Partners, Inc.*, No. 1:17-cv-00995, 2018 WL 10418861, at *2 (E.D. Va. Feb. 16, 2018) (quoting *Beaudett v. Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). That a *pro se* complaint should be

6

liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III.  ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. 10.  And while Defendants maintain that lack of subject matter jurisdiction is an appropriate basis for dismissal, at its core, Defendants' argument concerning subject matter jurisdiction is essentially that Plaintiffs have failed to state a plausible claim.  *See* Dkt. 11, 5-9.

Nevertheless, the Court observes that Plaintiffs have chosen not to complete the portion of their form Complaint that required them to specify their basis for subject matter jurisdiction. *See* Dkt. 1, 3-4.  The form Complaint provides that:

> [u]nder 42 U.S.C. § 1983, [ ] [litigants] may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights . . . .  Are you bringing suit against *(check all that apply)*: Federal officials (a *Bivens* claim) [or] State or local officials (a § 1983 claim).

*Id*. (emphasis added).  Plaintiffs chose not to "check" either option and Plaintiffs do not specifically state the basis for this Court's subject matter jurisdiction anywhere else in their Complaint.  *See generally*, Dkt. 1.  Despite this glaring omission, the Court recognizes Plaintiffs' *pro se* status and based on the facts contained in the Complaint, the Court infers that Plaintiffs have brought this suit under § 1983.  *Id*.

7

To be sure, this Court does have subject matter jurisdiction to consider a § 1983 claim. Accordingly, this Court will not dismiss this action for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

Yet, dismissal is nevertheless appropriate in the instant case because Plaintiffs' Complaint lacks a sufficient factual basis to infer a *plausible* § 1983 claim against Defendants.

In this case, Plaintiffs have specified that they are suing Sgt. Mischou and Lt. Bisek in their individual capacities. Dkt. 1, 2-3. To be sure, "Section 1983 provides for liability on '[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting 42 U.S.C. § 1983) (emphasis added in *Wilcox*). "'[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.'" *Wilcox*, 877 F.3d at 170 (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Here, Plaintiffs have not made such a showing.

Plaintiffs claim that Defendants violated their First Amendment rights to "freedom of expression, freedom of the press, and freedom of assembly[,]" and their Fourteenth Amendment rights to "equal protection and due process." Dkt. 1, 4. In response to Plaintiffs' First Amendment argument, Defendants contend that "Plaintiffs' allegations . . . do not demonstrate that [ ] [they] w[ere] entitled, as a matter of constitutional right, to be in the location described for the sole purpose of drawing out a police officer to be filmed." Dkt. 11, 6. Defendants maintain that this is so because Plaintiffs were not located in a traditional public forum when the

8

incident at issue took place. *Id*. (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

In response, Plaintiffs erroneously argue that they had the ability to "wander anywhere and everywhere [ ] [they] want[ed] [to] around the police station for any reason and behave just like the police do." Dkt. 13, 5. Plaintiffs misapprehend the law.

Indeed, "[i]n places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n*, 460 U.S. at 45. In *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, the Supreme Court provided an example of such a place. 460 U.S. 37, 45 (1983). In that case, the Court described that "streets and parks which 'have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id*. at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)). The Supreme Court has held that "[i]n these quintessential public forums, the government may not prohibit all communicative activity." *Perry Educ. Ass'n*, 460 U.S. at 45. In order for the state "to enforce a content-based exclusion" in such a location, "it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Id*. (citation omitted). And "[t]he state may enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id*. (citations omitted).

By contrast, "[p]ublic property which is not by tradition or designation a forum for public communication is governed by different standards." *Id*. It is indisputable that "the First Amendment does not guarantee access to property simply because it is owned or controlled by

9

the government." *Id*. (citation omitted). "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Id*. (citations omitted).

      In sum, as the Supreme Court explained in *United States v. Kokinda*,

> [r]egulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny. Regulation of speech on property that the Government has expressly dedicated to speech activity is also examined under strict scrutiny. But regulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness.

497 U.S. 720, 726-27 (1990) (internal citations omitted) (citing *Perry Educ. Ass'n*, 460 U.S. at 45-46).

      In *Kokinda*, the Supreme Court also explained that not every sidewalk is a public forum subject to strict scrutiny simply by virtue of that fact that it fits the physical description of a sidewalk. 497 U.S. at 728-29. Rather, "the location and purpose of a publicly owned sidewalk is critical to determining whether such a sidewalk constitutes a public forum." *United States v. Kokinda*, 497 U.S. 720, 728-29 (1990). In that case, the Court considered "whether a United States Postal Service regulation that prohibit[ed] 'soliciting alms and contributions' on postal premises violate[d] the First Amendment." *Id*. at 723. Pertinent here, in *Kokinda*, the Court rejected the argument that a sidewalk "on Postal Service property" was a "traditional public forum and therefore subject to strict scrutiny" simply because it was physically indistinguishable from a "municipal sidewalk" that was across the street from the post office's entrance. *Id*. at 727. The Court found this argument unpersuasive because "[t]he mere physical characteristics of the property" in dispute "cannot dictate forum analysis." *Id*. Rather, the Court found that "the

postal sidewalk at issue" in *Kokinda* "d[id] not have the characteristics of public sidewalks traditionally open to expressive activity." *Id*. Unlike a traditional public passageway, the Postal Service sidewalk considered in *Kokinda*, "lead[ ] only from the parking area to the front door of the post office." *Id*. Therefore, the Court reasoned, "[t]he postal sidewalk was constructed solely to assist postal patrons to negotiate the space between the parking lot and the front door of the post office, not to facilitate the daily commerce and life of the neighborhood or city." *Id*. at 728. As the *Kokinda* Court noted, in *Greer v. Spock*, 424 U.S. 828, 835-37 (1976), the Supreme Court held that "even though a military base permitted free civilian access to certain unrestricted areas, the base" nevertheless, "was a nonpublic forum[,]" and the "presence of sidewalks and streets within the base did not require a finding that it was a public forum." *Kokinda*, 497 U.S. at 727 (citing *Greer*, 424 U.S. at 835-37).

In the case at bar, Plaintiffs allege that they were standing on the "public sidewalk," and in a conclusory fashion, describe that area as one that "historically" and "at the time of incident," was "designated for public access." Dkt. 1, 5. Plaintiffs further explain that the place that they were standing was on the "publicly accessible side[ ] of the [police station's] security gate that separates the sidewalk where [ ] [Plaintiffs] were standing . . . from the restricted area that houses police vehicles and police equipment." *Id*. Plaintiffs' characterization of the area as a "public sidewalk" that was "designated for public access" constitutes a legal conclusion that need not be accepted. *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995). Yet, Plaintiffs' factual description of the area as the "side[ ] of the [police station's] security gate that separates the sidewalk where [ ] [Plaintiffs] were standing . . . from the restricted area that houses police vehicles and police equipment," is entitled to the presumption of truthfulness at this stage in the litigation. *See* Dkt.

11

1, 5. Moreover, this description is supported by Plaintiffs' video of the incident.[2] *See* Dkt. 15. And taking these facts as true, it is not clear that the area just outside of the security gate of the police parking lot at the police station is a "place[ ] which by long tradition or by government fiat ha[s] been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed." *Perry Educ. Ass'n*, 460 U.S. at 45. Simply because there was a sidewalk present in that area does not indicate that any content-neutral regulation of speech in that area should be subject to strict scrutiny. *Kokinda*, 497 U.S. at 727. At best, the area in which Plaintiffs were standing "was constructed solely to assist [ ] [police station] patrons to negotiate the space between the parking lot and the" police station. *Id*. at 728. However, given the close proximity of the sidewalk to the security gate of the police officer's parking lot, it is more likely that that thoroughfare was constructed to allow police officers to walk from their vehicles in their designated parking lot to the police station. Thus, based upon the facts that Plaintiffs have pleaded, the Court finds that a content-neutral regulation of Plaintiffs' speech in this area would not be subject to strict scrutiny. In light of this, Plaintiffs would be required to plead facts that demonstrate that the regulation of their speech here "was [un]reasonable" or an "effort to suppress [their] expression merely because public officials oppose[d]" Plaintiffs' views. *See Perry Educ. Ass'n*, 460 U.S. at 45; *see also Kokinda*, 497 U.S. at 726-27. Plaintiffs

---

[2] Defendants urge this Court to consider the Plaintiffs' video recording of the incident as, according to Defendants, it reveals that Plaintiffs were not standing in an area open by tradition or designation to the public for expressive activity. Dkt. 11, 5. Considering the standard of review for Rule 12(b)(6) motions (*supra*, p. 5-7), the Court finds that review of the video is appropriate under the circumstances. Here, Plaintiffs plead that they were at location in dispute in order to "captur[e] a police officer on camera" and the facts in the Complaint describe the Plaintiffs recording the video. Dkt. 1, 5. Thus, the Court finds that Plaintiffs have incorporated the video that they recorded into their Complaint by reference and the video is integral to the Complaint as it "significantly relate[d] to [ ] [this] cause of action." *McGlothian*, 2019 WL 1087156, at *7 (citations omitted). And here, Plaintiffs do not challenge the authenticity of the video, instead, they "invite the [C]ourt to consider" the video. Dkt. 13, 1. In light of this, the Court will consider the video in deciding the Motion.

have not pleaded those facts here.  Therefore, dismissal is warranted as to Plaintiff's First Amendment claim.

Plaintiffs also assert that Defendants violated their "Fourteenth Amendment right[s] to equal protection and due process."  Dkt. 1, 4.  Plaintiffs have not pleaded any facts in support of that claim.  As such dismissal of Plaintiffs' Fourteenth Amendment claim is also appropriate.

And assuming that Plaintiffs have brought this action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiffs' Complaint is also factually deficient as Plaintiffs have not "set forth a statement that indicates that a *federal official* violated" Plaintiffs' constitutional rights.  *Prasad v. Gothic Beauty Magazine*, 2018 WL 1863650, *4-5 (E.D. Va. 2018) (quotation and citation omitted) (emphasis added).

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Dkt. 10) is GRANTED in part and DENIED in part; and

IT IS FURTHER ORDERED that this action be DISMISSED without prejudice.

To appeal this decision, Plaintiffs must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiffs wants to appeal.  Plaintiffs need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Plaintiffs' right to appeal this decision.

The Clerk is directed to enter judgment in the defendants' favor, forward copies of this Order to Plaintiffs, *pro se*, and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
February 5, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge